**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMA CORPORATION et al.,

    Plaintiffs,

       v.

DR. GIRIWARLAL GUPTA, et al.,

    Defendants.

NO. 3:99-CV-01624

consolidated under 3:99-CV-1574

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court are several post-trial motions brought by the

Defendants.  The motions include a motion for temporary partial relief of judgment, or

alteration of judgment under Rules 59 and 60 pending the resolution of all post-trial and

other motions (Doc. 213); a motion under Rule 50 for judgment as a matter of law (Doc.

218); and a combined motion for a new trial, and/or to amend, alter or modify the

judgment, and/or for relief from judgment. (Doc. 209.)  The Court will also consider the

numerous motions to stay pursuant to Federal Rule of Civil Procedure 62(b).  (Docs. 210,

243, 248, 250, 252.)  These motions raise six different issues.  First, the Defendants

argue that the Plaintiff failed to properly demonstrate first use in their trademark

infringement claim, and therefore the Defendants should be granted either a new trial or

judgment as a matter of law.  The motions for a new trial or for judgment as a matter of

law will be denied on this argument, as the Plaintiff properly demonstrated first use for

purposes of trademark infringement.  Second, the Defendants argue that the Court

improperly failed to instruct the jury as to secondary meaning in a trademark infringement

case.  However, the motion for a new trial will be denied on these grounds as well, as the

Plaintiff's mark is a suggestive mark not requiring secondary meaning.  Third, the Defendants argue that the jury's finding of willfulness in the trademark infringement claim was against the weight of the evidence.  The Court will deny the motion for a new trial and for judgment as a matter of law on these grounds, as the jury's verdict was based upon substantial evidence.  Fourth, the Defendants argue in three motions that the jury verdict of $510,000 for trademark infringement was improper.  The Court will deny the motions on these grounds, as the verdict was not against the weight of the evidence, would not result in manifest injustice, and does not otherwise justify relief.  Fifth, the Defendants argue that the Court improperly trebled the Plaintiff's damages on the trademark infringement claim.  This motion will be granted, as the trebling of damages resulted in an unjustly high remedy for the Plaintiff.  Finally, the Court will deny the Defendants' five (5) motions to stay as moot, as the Court has decided the pending Rule 59 and Rule 60 motions.

## BACKGROUND

On August 31, 1999, the Jalans filed a civil action against the Guptas alleging claims including breach of contract, ownership of real estate in Pennsylvania, and ownership of the mark "Old West." (Doc. 1, 3:99-CV-1574)  The Guptas filed an Answer on November 3, 1999, alleging various affirmative defenses.  (Doc. 8, 3:99-CV-1574.)  On August 6, 2001, the Jalans moved for partial summary judgment on the breach of contract claim.  (Doc. 35, 3:99-CV-1574.)  The same day, the Guptas then moved for summary judgment on all claims by the Jalans.  (Doc. 40, 3:99-CV-1574.)

On September 8, 1999, Jama Corporation field a Complaint against the Guptas

and Old West Cowboy Boots, alleging breach of contract, violations of the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition, interference with contractual relations and defamation.  (Doc. 1, 3:99-CV-1624.)  The Defendants filed an answer and counterclaim against Jama Corporation on November 4, 1999.  (Doc. 3, 3:99-CV-1624.) The affirmative defenses and counterclaims were amended on February 11, 2000.  (Doc. 22, 3:99-CV-1624.)  Jama Corporation moved for partial summary judgment on its breach of contract claim, and for summary judgment on all counts of Defendants' counterclaims on August 6, 2001.  (Doc. 48, 3:99-CV-1574.)

On March 27, 2001, actions 3:99-CV-1574 and 3:99-CV-1624 were consolidated into civil action number 3:99-CV-1574 for pre-trial and discovery purposes.  (Doc. 12, 3:99-CV-1574.)  On December 19, 2001, the motions for summary judgment on both actions were granted in part and denied in part. (Doc. 84.)

The remaining counts in both actions went to trial on March 4, 2003.  The remaining counts in action 3:99-CV-1574 were claims and counterclaims for tortious interference, breach of contract, and trademark infringement pursuant to the Lanham Act. The only count remaining in 3:99-CV-1624 was the question of ownership of stock in the Old West Cowboy Boots Corporation.  The jury returned a verdict in action 3:99-CV-1574 on March 14, 2003, in favor of the Plaintiff, and awarded damages of $315,000 for breach of contract and $510,000 for trademark infringement.  (Doc. 205.)  The Court trebled the jury verdict on trademark damages, and judgment was entered against the Defendants in the amount of $1,530,000.  (Doc. 208.)  The remaining issues in action 3:99-CV-1624 were equitable issues, and therefore were for the Court.  On June 18, 2003, the Court held that a constructive trust was not imposed in favor of the Plaintiffs,

and therefore, the ownership of the stock in Old West Cowboy Boots remained with the Defendants.  (Doc. 234.)

On August 28, 2003, Defendant Old West Cowboy Boots Corporation filed a notice of bankruptcy with the Court.  (Doc. 255.)  On September 10, 2003, the Court stayed the case until further Order of the Bankruptcy Court.  (Doc. 257.)  On June 23, 2005, the Court lifted the stay and reinstated the case.  (Doc. 282.)  Following the trial, Defendants filed various post-trial motions, including a motion for temporary partial relief of judgment, or alteration of judgment under Rules 59 and 60 pending the resolution of all post-trial and other motions (Doc. 213); a motion under Rule 50 for judgment as a matter of law (Doc. 218); and a combined motion for a new trial, and/or to amend, alter or modify the judgment, and/or for relief from judgment. (Doc. 209.)  Defendants also made several motions to stay pursuant to Federal Rule of Civil Procedure 62(b).  (Docs. 210, 243, 248, 250, 252.)

These motions are fully briefed and ripe for disposition.


**LEGAL STANDARDS**

**I.      Rule 50(b)**

Under Rule 50(b), a party may renew its request for a motion for judgment as a matter of law by filing a motion no more than ten (10) days after judgment is entered. *See* FED. R. CIV. P. 50(b).  In the present case, Defendants' Rule 50(b) motion was timely filed.  (Doc. 218.)  Judgment notwithstanding the verdict should be granted sparingly. *See Walter v. Holiday Inns, Inc.,* 985 F.2d 1232, 1238 (3d Cir. 1993).  In deciding whether to grant a Rule 50(b) motion:

4

> the trial court must view the evidence in the light most
> favorable to the non-moving party, and determine whether the
> record contains "the minimum quantum of evidence from
> which a jury might reasonably afford relief."  The court may
> not weigh evidence, determine the credibility of witnesses or
> substitute its version of the facts for that of the jury.  The court
> may, however, enter judgment notwithstanding the verdict if
> upon review of the record, it can be said as a matter of law
> that the verdict is not supported by legally sufficient evidence.

*Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685, 691-92 (3d Cir. 1993),

*abrogation on other grounds recognized by United Artists Theatre Circuit, Inc. v. Twp. of*

*Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003) (citations omitted).  The question is not

whether there is literally no evidence supporting the non-moving party, but whether there

is evidence upon which the jury could properly find for the non-moving party.  *See Walter,*

985 F.2d at 1238 (citing *Patzig v. O'Neil,* 577 F.2d 841, 846 (3d Cir. 1978)).

## II.    Rule 59(a)

Under Rule 59(a), motions for a new trial must be filed within ten (10) days of the

date the judgment was entered.  *See* FED. R. CIV. P. 59.  Defendants' motion for a new

trial was timely filed.  (Doc. 209.)  The decision to grant a new trial is left to the sound

discretion of the trial judge.  *See Blackiston v. Johnson,* No. 91-5111, 1995 WL 563834,

at *1 (E.D. Pa. 1995), *aff'd* 91 F.3d 122 (3d Cir. 1996), *cert. denied* 519 U.S. 953 (1996).

Courts have granted motions for a new trial where:  (1) there is a significant error of law,

to the prejudice of the moving party; (2) the verdict is against the weight of the evidence;

(3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in

improper conduct that had a prejudicial effect on the jury.  *See Maylie v. Nat'l R. R.*

*Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992).

Where the evidence is in conflict, and subject to two (2) or more interpretations, the trial

judge should be reluctant to grant a new trial.  *See Klein v. Hollings,* 992 F.2d 1285, 1295 (3d Cir. 1993).

### III.    Rule 59(e)

Under Rule 59(e), motions to alter or amend the judgment must be filed within ten (10) days of the date the judgment was entered.  *See* FED. R. CIV. P. 59.  Defendants' motion to alter or amend the judgment was timely filed.  (Doc. 209.)  In order to prevail on a motion to alter or amend the judgment, the movant must show: (1) an intervening change in the controlling law; (2) the availability of new evidence not available previously; or (3) the need to prevent a clear error of law or manifest injustice.  *See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

### IV.    Rule 60

Rule 60(b) states that "the court may relieve a party from a final judgment" for a number of reasons, including "mistake, inadvertence, surprise, or excusable neglect," because the judgment is "void," and "any other reason that justifies relief."  FED. R. CIV. P. 60(b)(1-6).  However, a motion under Rule 60(b) must be made within a reasonable time, and for parts (1), (2), and (3), no more than a year after the entry of judgment.  FED. R. CIV. P. 60(c)(1).

### DISCUSSION

### I.    First Use in Trademark Infringement

In their Rule 50 and Rule 59 motions, Defendants argue that judgment should have been granted for the Defendants on the issue of trademark infringement due to the

Plaintiff's inability to tack on to the prior use of an abandoned mark.  In determining whether trademark infringement has occurred, the party claiming infringement must demonstrate ownership, determined by prior use of the trademark.  *Gen. Bus. Serv., Inc. v. Rouse*, 495 F. Supp. 526, 532-33 (E.D. Pa. 1980).  Ownership is established through the first use of the trademark in commerce.  *Id.*

Defendants argue that Jama Corporation lacks standing to bring a Lanham Act violation, as tacking is not permitted to demonstrate prior use.  Essentially, Defendants argue that even if the M.K.J. Corporation owned the "Old West" trademark from 1990 to 1994, those rights did not vest in Jama Corporation, and Jama Corporation cannot "tack" the prior use established by M.K.J. Corporation.

A.    Relevant Factual Background

M.K. Jalan testified as to the relationships between the various companies.  Mr. Jalan stated that M.K.J. Corporation was initially a business with three (3) partners producing leather uppers for footwear.  (Trial Tr. vol. 1, 33-34, Mar. 4, 2003.)  Mr. Jalan stated that M.K.J. Corporation began selling completed footwear to the United States market in 1990.  (Trial Tr. vol. 1, 36, Mar. 4, 2003.)  M.K.J. Corporation was involved with the Dunbar Boot Company, who were the buyers of the boots and a representative of Acme Boot Company.  (Trial Tr. vol. 1, 36, Mar. 4, 2003.)  Dunbar Boot Company worked as an intermediary between M.K.J. Corporation in India and the Acme Boot Company. (Trial Tr. vol. 1, 36, Mar. 4, 2003.)  At this time, the Acme Boot Company was having business difficulties, and Hy Muskat, the owner of the Dunbar Boot Company, suggested to Mr. Jalan that he take over the business of Acme Boot Company.  (Trial Tr. vol. 1, 36, Mar. 4, 2003.)  When M.K.J. Corporation began marketing cowboy boots in the United

States, Hy Muskat and Mr. Jalan discussed the names for the western style boots, and coined the term "Old West." (Trial Tr. vol. 1, 37, Mar. 4, 2003.)  When M.K.J. Corporation began shipping the boots in June 1990, the boots and the outside of the box had the term "Old West" imprinted on them.  (Trial Tr. vol. 1, 38, Mar. 4, 2003.)  The Dunbar Boot Company was to act as the distributor in the United States for the M.K.J. Corporation's boots.  (Trial Tr. vol. 1, 37-39, Mar. 4, 2003.)  However, Hy Muskat went through a financial crisis, and was unable to pay M.K.J. Corporation for the boots.  (Trial Tr. vol. 1, 38-39, Mar. 4, 2003.) Mr. Jalan then discussed with Defendant Giriwarlal Gupta the opportunity to arrange for the sales and marketing of M.K.J. Corporation's boots.  (Trial Tr. vol. 1, 39, Mar. 4, 2003.)  The creation of Old West Cowboy Boots Corporation evolved from these discussions, and Ella Santiago acted as an agent of M.K.J. Corporation, incorporated Old West Cowboy Boots Corporation. (Trial Tr. vol. 1, 56-57, Mar. 4, 2003.)   However, Mr. Jalan testified that M.K.J. Corporation was dissolved in February 1994.  (Trial Tr. vol. 1, 89, 148, Mar. 4, 2003.)  At the time, half a million dollars worth of boots were in the United States for disposal for sales.  (Trial Tr. vol. 1, 89, 158, Mar. 4, 2003.)  Furthermore, at the time of dissolution of M.K.J. Corporation, M.K.J. Footwear Private Limited had boots in its inventory that had the mark of "Old West" on them, and was still manufacturing boots in production with the mark "Old West."  (Trial Tr. vol. 1, 158-59, Mar. 4, 2003.)

M.K. Jalan also testified as to the formation of Jama Corporation, and testified that Jama Corporation was formed between March and April of 1994.  (Trial Tr. vol. 1, 149, Mar. 4, 2003.)  He also testified that Jama Corporation first shipped cowboy boots in April or May of 1994, and that these shipments included the term "Old West" on the boots.

8

(Trial. Tr. vol. 1, 149, Mar. 4, 2003.)

### B.   Abandonment and Relatedness of Parties

Sufficient evidence was established at trial that M.K.J. Corporation had prior ownership of the trademark "Old West," as testified to by M.K. Jalan.  For example, M.K. Jalan testified regarding a page from a catalogue printed in 1991 depicting four (4) styles of cowboy boots with the mark of "Old West," listing the company name of the M.K.J. Corporation.  (Trial Tr. vol 1, 143-44, Mar. 4, 2003.)

Defendants argue that the Plaintiff cannot "tack" his prior use from M.K.J. Corporation to Jama Corporation.  However, it is important to note that the term "tacking" is a term of art in trademark infringement law.  "Tacking," or constructive use, permits a trademark holder to "tack" his first use date in an earlier, similar, but technically distinct mark, to a later mark, when the previous mark is the equivalent to the current mark in question.  *See, e.g. Brookfield Commc'n, Inc. v. West Coast Entm't*, 174 F.3d 1036, 1047-48 (9th Cir. 1999).  The technical term of "tacking" is irrelevant here.  The relevant issue is whether the term "Old West" was abandoned by M.K.J. Corporation upon its dissolution.

The Defendants claim that, although evidence may have established that M.K.J. Corporation did have first use of the mark "Old West," this mark was abandoned at the time of the dissolution of M.K.J. Corporation.  Section 45 of the Lanham Act, 15 U.S.C. § 1127 provides that a mark is deemed to be "abandoned" if one of two situations occur:

> (1)  When its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.  "Use" of a mark means the bona fide use of such mark made in the ordinary

course of trade, and not made merely to reserve a right in a mark.

(2)  When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark.  Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127.  Part (2) of Section 1127 is irrelevant to this case, and therefore the Court will only consider Part (1).  In utilizing the defense of abandonment, a two-part test has long been recognized.  "To establish the defense of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon." *U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 138 (3d Cir. 1981) (citing *Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 31 (1900)).  Furthermore, such a defense "must be strictly proved."  *Id.* at 139.  The Defendants have failed to establish the defense of abandonment.  Although there may have been a practical abandonment in the dissolution of M.K.J. Corporation, this dissolution does not establish the actual intent to abandon the mark of "Old West."  M.K. Jalan testified as to the inventory of "Old West" cowboy boots at the time of dissolution.  At the time of dissolution of M.K.J. Corporation, M.K.J. Footwear Private Limited had boots in its inventory that had the mark of "Old West" on them, and was still manufacturing boots in production with the mark "Old West."  (Trial Tr. vol. 1, 158-59, Mar. 4, 2003.)  As M.K.J. Footwear was continuing to create boots with the "Old West" mark even after the dissolution of M.K.J. Corporation, the Defendants have failed to demonstrate an actual intent to abandon.

The Defendants argue that a successive user is not entitled to the date of first use by its successor, and that no rights can arise by succession through a later sale of

goodwill and/or trademarks, and that such rights must be established anew by the successor.  In *Browning King Co. of New York v. Browning King Co.*, 176 F.2d 105 (3d Cir. 1949), the plaintiff, a New York corporation, sought to enjoin a Pennsylvania corporation from the use of the name "Browning King," and the marks associated with that name.  *Id.* at 106.  In *Browning King*, the Third Circuit Court of Appeals held that trademarks and goodwill cannot be transferred in gross, as they are an integral part of a business.  *Id.*  The court further held that an intent to abandon must be proven by lack of continuing use, as well as other circumstances.  *Id.* at 106-07.  However, this case dealt with the bankruptcy proceedings, and the sale of certain business stores, and not with the type of situation before the Court at present.  Defendants also cite *Sutton Cosmetics (P.R.) Inc. v. Lander Co.*, 455 F.2d 285 (2d Cir. 1972) for the proposition that the Plaintiff may not use the first use date of M.K.J. Corporation.  In *Sutton*, a company named Schering made an official announcement in 1970 to abandon their mark of "Sutton Cosmetics."  *Id.* at 286.  When one of Schering's wholesale customers, Sutton Cosmetics (P.R.) learned of the intent to abandon the mark, the company attempted to buy the line. *Id.*  Although unable to buy the entire line, it was able to purchase Schering's inventory and packaging.  *Id.*  However, prior to the wholesaler making any Sutton sales, another company, Lander, had made one sale of cosmetics labeled "Sutton" to a retailer in the New York metropolitan area.  *Id.*  Sutton Cosmetics brought suit against Lander based upon the Lanham Act.  *Id.* at 287.  This case revolved around the concept that once a mark was abandoned, both companies were equally free to attempt to capture the mark. *Id.* at 288.  Like *Browning King*, this case does not establish that a company such as Jama Corporation could not resume use of the trademark of "Old West."

The Court differentiates the cases of *Browning King* and *Sutton Cosmetics* based upon the relationship between M.K.J. Corporation, Jama Corporation, and M.K. Jalan himself.  Trademark law permits licensing and use between related companies when a mark is registered or sought to be registered.  Section 1127 defines the term "related companies," holding that a "related company" "means any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used."  15 U.S.C. § 1127.  This definition is used in conjunction with Section 1055 of the Lanham Act, which states that

> Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public.  If first use of a mark by a person controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be.

15 U.S.C. § 1055.  In this case, the mark of "Old West" was not registered by M.K.J. Corporation, Jama Corporation, or M.K. Jalan at the time of the alleged infringement. However, this section is instructive as to the manner of treatment of a mark between related companies and persons.

M.K. Jalan was the katra, or head of the Jalan family.  (Trial Tr. vol. 1, 156, Mar. 4, 2003.)  According to Indian tradition, he is the head of any business run by the family in which male children participate.  (Trial Tr. vol. 1, 156, Mar. 4, 2003.)  Therefore, Mr. Jalan was involved with the running of M.K.J. Corporation, as well as Jama Corporation.  At the time of dissolution of M.K.J. Corporation, M.K.J. Footwear Private Limited had boots in its

inventory that had the mark of "Old West" on them, and was still manufacturing boots in production with the mark "Old West."  (Trial Tr. vol. 1, 158-59, Mar. 4, 2003.)  Although M.K.J. Corporation dissolved, the product and the mark of "Old West" continued through the production by M.K.J. Footwear.  Furthermore, M.K. Jalan himself had a hand in the running of M.K.J. Footwear Private Limited.  (Trial Tr. vol. 1, 148, Mar. 4, 2003.)  Mr. Jalan testified that M.K.J. Footwear Private Limited was the manufacturer of the boots, and "it was our own company."  (Trial Tr. vol. 1, 148-49, Mar. 4, 2003.)  The goodwill did not dissolve with M.K.J. Corporation, but rather remained with the mark in the goods.  As the Court ruled on the Rule 50 motion at the close of Plaintiff's case, M.K. Jalan is one and the same with the companies he headed as a katra.  The Defendants have not offered any new arguments or evidence since the time of their Rule 50 motion at the close of the Plaintiff's case-in-chief.

Therefore, the Defendants have failed to demonstrate that they are entitled to a new trial.  "Since the standard for granting a new trial is 'lower' than that for entering judgment as a matter of law, it is clear that if a new trial is not warranted, entry of judgment as a matter of law would be improper."  *Markovich v. Bell Helicopter Textron, Inc.*, 805 F. Supp. 1231 (E.D. Pa. 1992).  As the Court finds that a new trial is not warranted on the issue of trademark ownership, the Court will also decline to enter judgment as a matter of law.

## II.      Jury Instruction Regarding Trademark Infringement

### A.      Preservation of Error

Defendants argue that they should be granted a new trial because the Court failed to give a jury instruction stating that the mark was not inherently distinctive, and therefore

13

secondary meaning was required for protection of the mark.  (Doc. 289.)  Federal Rule of Civil Procedure 51 addresses the procedure for the Court to give the jury its instructions, and the procedure available for a party to object or assign error to those instructions. The rule generally provides that no party may assign error to the jury instructions unless he made a timely and specific objection to those instructions.  FED. R. CIV. P. 51(c-d).

Rule 51 further states that "[a] party may assign as error: (A) an error in the instruction actually given, if that party properly objected; or (B) a failure to give an instruction, if that party properly requested it and - unless the court rejected the request in a definitive ruling on the record - also properly objected."  FED. R. CIV. P. 51(d)(1). Therefore, to preserve an issue for a post-trial motion or for appeal, a party generally must object to the charge.

In this case, the Defendants had several opportunities to object to the Court's jury instructions.  Prior to instructing the jury, the Court held a charging conference on March 12, 2003 at which time the parties' proposed jury instructions were discussed.  (Trial Tr. vol. 7 , 1-66, Mar. 12, 2003.)  The parties and the Court discussed whether an instruction on secondary meaning was appropriate.  (Trial Tr. vol. 7 , 17-18, Mar. 12, 2003.)  During the discussion on the secondary meaning instruction, counsel for the Defendants argued in favor of the inclusion of a jury instruction on secondary meaning.  (Trial Tr. vol. 7 , 18, Mar. 12, 2003.)  But, counsel for the Defendants failed to object when the Court determined that it would not give such an instruction. (Trial Tr. vol. 7 , 18, Mar. 12, 2003.)

The Court then read to the parties the jury charge on trademark infringement, which listed whether the "Old West trademark is inherently distinctive" as one of its elements.  (Trial Tr. vol. 7 , 20-21, Mar. 12, 2003.)  At the time of the jury charging

conference, counsel for the Defendants did not object to the jury instructions regarding trademark infringement, or the manner in which the Court discussed the element of inherent distinctiveness.

After instructing the jury, the Court asked counsel for the parties if there was "anything from counsel." (Trial Tr. vol. 7 , 217, Mar. 12, 2003.) Counsel for the Defendants raised one issue at sidebar on the record regarding the names of one of the parties in the instructions, but did not raise any other issues. (Trial Tr. vol. 7 , 217, Mar. 12, 2003.) After this discussion, the Court again asked the parties if there was "anything else." (Trial Tr. vol. 7 , 217, Mar. 12, 2003.) One other issue was discussed regarding the date relevant to the breach of contract claim. (Trial Tr. vol. 7 , 217-18, Mar. 12, 2003.) The Court asked a third time if there was anything else from counsel. (Trial Tr. vol. 7 , 218, Mar. 12, 2003.) Counsel for defendant had the opportunity to object to the failure to include a charge on the trademark not being inherently instinctive, but failed to do so at this time. (Trial Tr. vol. 7 , 217, Mar. 12, 2003.)

Plaintiff argues that the Defendants' failure to object to the instructions waived any objections to the jury instructions given. However, "'a definitive ruling from the trial court rejecting a requested instruction is sufficient to preserve the issue for appeal.'" *Collins v. Alco Parking Corp.*, 448 F.3d 652, 656 (3d Cir. 2006) (quoting *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 276 (3d Cir. 1998)). The Third Circuit Court of Appeals has further held that "[i]n this circuit it is clear that by filing and obtaining a ruling on a proposed instruction a litigant has satisfied Rule 51." *Bowley v. Stotler & Co.*, 751 F.2d 641, 646 (3d Cir. 1985). In *Bowley*, the court held that the issue on the jury instruction was preserved for appeal because counsel had obtained a definitive ruling rejecting his

15

proposed instruction, even though counsel failed to reassert his objection. *Id.* This result was based on the reconciliation of Rule 51 with Rule 46 of the Federal Rules of Civil Procedure. *Id.* at 647. The court held that "counsel was entitled to assume that he need not renew objections already ruled upon." *Id.* Therefore, although counsel for Defendants in this case did not specifically object to the rejection of the secondary meaning jury charge, the issue was preserved for the purposes of post-trial motions and appeal at the time of the Court's definitive rejection of the proposed jury charge.

B.     Secondary Meaning Jury Instruction

To prove trademark infringement, a plaintiff must show that (1) the mark is valid and legally protectible; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of goods or services. *Fisons Horticulture, Inc. v. Vigoro Indus. Inc.*, 30 F.3d 466, 472 (3d Cir. 1994). The first two elements are satisfied when a mark is federally registered and has become incontestible under the Lanham Act. *Id.* However, if a mark is not federally registered, validity depends upon a secondary meaning unless the mark is inherently distinctive. *Id.* (citing *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.3d 277, 291 (3d Cir. 1991)).

Courts have divided marks into four categories of distinctiveness: (1) arbitrary or fanciful terms, where there is no logical or suggestive relation to the characteristic of the goods; (2) suggestive terms, which suggest rather than describe the characteristics of the goods; (3) descriptive terms, which describe a characteristic or ingredient of the goods; and (4) generic terms, which serve as a common descriptive name of a product class. *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir. 1986) (citing *Keebler Co. v.*

*Rovira Biscuit Corp.*, 624 F.2d 366, 374 n. 8 (1ˢᵗ Cir. 1980)).  If a term is categorized as arbitrary or suggestive, it is treated as inherently distinctive.  *Id.* at 297.  However, if a trademark is descriptive, a claimant may only establish rights if he can prove a secondary meaning.  *Id.* A generic term is never protectible.  *Id.*

In this case, the term "Old West" is not an arbitrary or fanciful term; nor is it a generic term.  Therefore, the Court must consider whether it is suggestive or descriptive.  The Third Circuit Court of Appeals has held that "'[a] term is suggestive if it requires imagination, thought or perception to reach a conclusion as to the nature of the goods.  A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.'"  *Id.* (quoting *Stix Prod., Inc. v. United Merchants & Mfr., Inc.*, 295 F. Supp. 479, 488 (S.D.N.Y. 1968)).

Defendants argue that the term "Old West" is a geographically descriptive term, and is therefore not inherently distinctive.  In contrast, Plaintiff argues that although "Old West" contains a geographical word, the mark itself is not a geographically descriptive mark.  The Eastern District of Pennsylvania discussed inherent distinctiveness in the connection with the trademark for "Philadelphia Cream Cheese."  *Kraft Gen. Foods, Inc. v. BC-USA, Inc.*, 840 F. Supp. 344 (E.D. Pa. 1993).  The court held that "[a] term that is descriptive of the geographic location of origin of goods is not inherently distinctive, i.e. arbitrary and suggestive, and is usually protected only upon proof that it has acquired secondary meaning.  If the geographic term is used in an arbitrary manner, however, taking into account the type of goods involved, then no secondary meaning is required."  *Id.* at 349.  The court used three questions in determining whether the geographic term was used arbitrarily.  Those questions were: (1) if the mark was the name of the place or

region where the product is produced; (2) if the geographic term is likely to denote

reasonable buyers that the goods came from the named place; and (3) if the place is

noted for these particular goods.  *Id.*  In the case of "Old West," the mark is not the name

of the place or region where the product is produced - the product is manufactured in

India.  Furthermore, although reasonable buyers may believe the goods came from the

western part of the United States, it is unlikely that a reasonable buyer would believe the

goods came from the "Old West."  Finally, the western part of the country is noted for

cowboy boots and similar type goods.  Although the word "West" is incorporated in the

mark, this does not make the mark a *per se* geographically descriptive term.  The use of

"Old" with "West" "requires imagination, thought or perception to reach a conclusion as to

the nature of the goods."  *A.J. Canfield Co.*, 808 F.2d at 297.  A term such as "Old West"

can evoke numerous thoughts about American history in the western part of the United

States.  Thus, it requires the type of thought required by a suggestive mark, and is not

descriptive in nature.

Even if the mark was determined to be descriptive, and therefore requiring a

secondary meaning for purposes of trademark infringement, no reasonable juror could

find that a secondary meaning did not exist.  The Third Circuit Court of Appeals has held

that a mark demonstrates a secondary meaning when it "is interpreted by the consuming

public to be not only an identification of the product or services, but also a representation

of the origin of those products or services."  *Checkpoint Sys., Inc. v. Check Point*

*Software Tech., Inc.*, 269 F.3d 270, 283 n.10 (3d Cir. 2001) (quoting *Commerce Nat'l Ins.*

*Serv. Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000)).  *Commerce*

*National* further named a non-exclusive list of factors which may be considered in

determining if a mark has obtained a secondary meaning, including: (1) the extent of sales and advertising leading to buyer association; (2) the length of use; (3) the exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and (11) actual confusion.  *Commerce Nat'l*, 214 F.3d at 438.

Several of the factors described by the *Commerce National* court were presented at trial.  Stephen Scherf, a certified public accountant, testified as to the extent of sales. (Trial Tr. vol. 3, 46-127, Mar. 6, 2003.)  Evidence at trial was also presented in the form of customer testimony.  Mr. Dan Stoker, a former retailer from Corral West, testified as to his relationship with M.K. Jalan.  (Trial Tr. vol. 2, 71, Mar. 5, 2003.)  He stated that he first met Mr. Jalan at a market, the Denver Mart in Denver, Colorado.  (Trial Tr. vol.2, 71, Mar. 5, 2003.)  Mr. Stoker testified that at that time, Mr. Jalan had a display room at the market for the cowboy boots.  (Trial Tr. vol. 2, 71, Mar. 5, 2003.)  He testified that he began buying children's footwear from Mr. Jalan, and that the product did very well, and that business went up "drastically."  (Trial Tr. vol. 2, 71, Mar. 5, 2003.)  He also testified that the relationship progressed so that Corral West also bought men's and ladies' boots. (Trial Tr. vol. 2, 72, Mar. 5, 2003.)  When asked to describe the Old West Cowboy Boot product, he testified that he first thinks of quality.  (Trial Tr. vol. 2, 74, Mar. 5, 2003.)

M.K. Jalan also testified as to the strength of the sales in the year 1994.  (Trial Tr. vol. 1, 93, Mar. 4, 2003.)  He testified that the company sold about 36,000 pairs of boots in that first year.  (Trial Tr. vol. 1, 93, Mar. 4, 2003.)  Mr. Jalan also testified that at that point, he would personally meet with some large buyers, including Corral West and

Shepler's.  (Trial Tr. vol. 1, 93, Mar. 4, 2003.)  He also testified that he was involved in trade shows in Dallas, Texas and in Denver, Colorado, where he would meet with various sales representatives.  (Trial Tr. vol. 1, 9394, Mar. 4, 2003.)  Mr. Jalan testified that a room was rented at each trade show to display the western style boots.  (Trial Tr. vol. 1, 94, Mar. 4, 2003.)  He further testified that he went to these shows for several years, including in 1993, 1994, and 1995.  (Trial Tr. vol. 1, 94, Mar. 4, 2003.)

Furthermore, evidence of copying was demonstrated through the testimony of Giriwarlal Gupta.  (Trial Tr. vol. 5, 39, Mar. 10, 2003.)  Mr. Gupta testified that after he learned that Jama Corporation was no longer going to supply boots to the Old West Cowboy Corporation, he made arrangement with a company named Prachi Leather Private Limited to manufacture boots.  (Trial Tr. vol. 5, 39, Mar. 10, 2003.)  At one point, Mr. Gupta testified regarding several boxes of cowboy boots, including Exhibits 183 and 184.  (Trial Tr. vol. 5, 62-64, Mar. 10, 2003.)  Exhibit 184 was a product manufactured by Prachi Leather Private Limited, and it included the "brand name" of "Old West."  (Trial Tr. vol. 5, 63, Mar. 10, 2003.)  Mr. Gupta further testified that when Old West Cowboy Boots Corporation began using Prachi as their manufacturer, the box remained the same.  (Trial Tr. vol. 5, 140, Mar. 10, 2003.)  He specifically stated that "[T]hat is the way they had been, so we kept on carrying that way.  This is the Old West mark and we kept on carrying it that way."  (Trial Tr. vol. 5, 140, Mar. 10, 2003.)  Based on the evidence from trial, even if a secondary meaning jury instruction was required, there is sufficient evidence in the record that a secondary meaning was acquired.

Courts grant motions for a new trial where: (1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3)

the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury.  *See Maylie v. Nt'l R. R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992). In this case, even if there was an error of law regarding the failure to include a secondary meaning jury instruction, such an error was not significant.  Therefore, the Court will not grant a new trial on the basis of the Court's jury instructions.

### III.    Willful Infringement under the Lanham Act

Defendants argue that the finding of willful infringement by the jury against the Defendants was against the weight of the evidence.  (Docs. 209, 213, 218.)  In a trademark infringement case, "[k]nowing or willful infringement consists of more than the accidental encroachment of another's rights.  It involves an intent to infringe or a deliberate disregard of a mark holder's rights."  *A&H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, No. Civ. A. 94-CV-7408, 2002 WL 27735, at *4 (E.D. Pa. Jan. 9, 2002) (quoting *SecuraComm Consulting Inc. v. Securacom Incorp.*, 166 F.3d 182, 187 (3d Cir. 1999), *superseded by statute on other grounds as stated in Banjo Buddies, Inc v. Renosky*, 399 F.3d 168 (3d Cir. 2005)).  *See also Gucci America, Inc. v. Daffy's Inc.*, 354 F.3d 228, 239 (3d Cir. 2003).  The *SecuraComm* court noted that willful infringement "involv[es] 'an aura of indifference as to the plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff has nurtured.'" *SecuraComm*, 166 F.3d at 187 (quoting *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970)).

In *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434 (D.N.J. 2003), a patent holder brought an infringement action against a competitor based upon

21

patents for disposable cameras.  In *Fuji Photo*, the jury determined that the defendants

willfully infringed on the plaintiff's patents for disposable cameras.  *Id.* at 456.  In a patent

case, the determination of willfulness is a question of fact for the jury, and must be

proven by clear and convincing evidence.  *Id.*  To overturn a jury's finding of willfulness

on a motion for judgment as a matter of law, the jury's finding must be unsupported by

substantial evidence in the record.  *Id.* (citing *Comark Commc'n, Inc. v. Harris Corp.*, 156

F.3d 1182, 1190 (Fed. Cir. 1998)).  In overturning a jury verdict, the infringer "bears a

'heavy burden' to show that 'no reasonable juror could find the asserted proof of

willfulness rose to the quantum of clear and convincing evidence.'" *Id.* (quoting *Comark*,

156 F.3d at 1190)).

　　　　*Fuji Photo* specifically follows the findings of *Comark Communications*, which also

discussed a challenge to a jury's finding of willfulness in a patent case.  *Comark*

*Commc'n,* 156 F.3d at 1190.  In discussing whether willfulness is demonstrated in a

patent case, the *Comark* court noted that there is a totality of circumstances test.  *Id.*

Willfulness, "'as in life, is not an all-or-nothing treat, but one of degree.  It recognizes that

infringement may range from unknowing, or accidental, to deliberate, or reckless,

disregard of the patentee's legal rights.'" *Id.* (quoting *Rite-Hite Corp. v. Kelley Co., Inc.*,

819 F.2d 1120, 1125-26 (Fed. Cir. 1987)).  *See also Tristrata Tech., Inc. v. ICN Pharm.,*

*Inc.*, 313 F. Supp. 2d 405, 412 (D. Del. 2004) (holding that willfulness is a question of

fact, which includes an inquiry as to "whether the infringer held a reasonable belief that

the patent it infringed was invalid, not infringed, or unenforceable.  If a potential infringer

has notice of another's patents, the potential infringer has an affirmative duty of care.").

　　　　Although the heavy burden described by *Fuji Photo* and *Comark* has been

previously applied to patent cases, it is also applicable to a trademark infringement case.

The Federal Circuit has noted that various criteria have been stated for determining

willfulness in a patent case, but "the primary consideration is whether the infringer, acting

in good faith and upon due inquiry, had sound reason to believe that it had the right to act

in the manner that was found to be infringing." *SRI Int'l, Inc., v. Advanced Tech. Lab.,*

*Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997).  Such a consideration is similar to

trademark's requirement of willful infringement by acting with intent or deliberate

disregard.  *SecuraComm,* 166 F.3d at 187.

    In this case, the Defendants have not carried their heavy burden in demonstrating

that the jury acted against the weight of the evidence in finding willful trademark

infringement.  By the facts presented at trial, a reasonable juror could find the evidence of

willfulness, and such evidence rose to the level of clear and convincing evidence.

Defendants argue that their use of the mark was innocent, and that because Plaintiff's

mark was not registered, it could not be inferred that the Defendants knew or should have

known of the mark.  In contrast, Plaintiff argues that it proved that it had prior use and

goodwill that the Defendants appropriated.  Prior use in this case was demonstrated by

both the testimony of M.K. Jalan, and the page of the catalogue depicting "Old West"

cowboy boots in conjunction with M.K.J. Corporation.  (Trial Tr. vol. 1, 143-44, Mar. 4,

2003.)  Therefore, a reasonable juror could have found prior use.  A reasonable juror

could also have found that there was goodwill in the mark of "Old West."  Mr. Dan Stoker,

a former retailer from Corral West, testified as to the goodwill associated with "Old West"

cowboy boots.  (Trial Tr. vol. 2, 71-74, Mar. 5, 2003.)  His testimony addressed both the

quality and desirability of a product associated with the "Old West" mark. (Trial Tr. vol. 2,

71-74, Mar. 5, 2003.)

Finally, willfulness could be inferred by the jury through the testimony of Giriwarlal Gupta.  Mr. Gupta testified that after he learned that Jama Corporation was no longer going to supply boots to the Old West Cowboy Corporation, he made arrangements with Prachi Leather Private Limited to manufacture boots.  (Trial Tr. vol. 5, 39, Mar. 10, 2003.) His testimony included the statement that, when Old West Cowboy Boots Corporation began using Prachi as their manufacturer, the box did not change from when Jama Corporation was the manufacturer.  (Trial Tr. vol. 5, 140, Mar. 10, 2003.)  Mr. Gupta specifically testified that "[T]hat is the way they had been, so we kept on carrying that way.  This is the Old West mark and we kept on carrying it that way."  (Trial Tr. vol. 5, 140, Mar. 10, 2003.)  Therefore, a reasonable juror could find that there was willfulness in the actions of the Defendants through their use of the mark of "Old West" with the manufacturer Prachi.

For these reasons, Defendants have failed to demonstrate that they are entitled to a new trial based upon the verdict being against the weight of the evidence.  *See Maylie v. Nat'l R. R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992).  The jury's verdict is based on substantial evidence, and therefore should not be overturned.  It is not for the Court to weigh the evidence or determine the credibility of the witnesses, nor may it substitute its judgment of the facts for that of the jury.  *Griffiths v. Cigna Corp.*, 857 F. Supp. 399, 403-04 (E.D. Pa. 1994)).

"Since the standard for granting a new trial is 'lower' than that for entering judgment as a matter of law, it is clear that if a new trial is not warranted, entry of judgment as a matter of law would be improper."  *Markovich v. Bell Helicopter Textron,*

24

*Inc.*, 805 F. Supp. 1231 (E.D. Pa. 1992).  As the Court finds that a new trial is not

warranted on the issue of willful infringement, the Court will also decline to enter

judgment as a matter of law.

> **IV.    Jury Verdict of $510,000 for Trademark Infringement Claim**

Subject to the principles of equity, Section 1117(a) of Title 15 entitles the plaintiff

in a trademark infringement case to recover (1) defendants' profits, (2) any damages

sustained by the plaintiff, and (3) the costs of the action.  15 U.S.C. § 1117(a).

Each side presented one expert witness to testify regarding damages.  Plaintiff's

expert, Stephen Scherf, a certified public account, testified that he did a lost profit

calculation, and calculated that the profits made by Old West Cowboy Boots Corporation

on the infringing cowboy boots was $82,417.  (Trial Tr. vol. 3, 74, Mar. 6, 2003.)

However, he also testified that Old West Cowboy Boots Corporation made $704,000 in

gross sales, which does not subtract the cost to produce the boots.  (Trial Tr. vol. 3, 73-

74, Mar. 6, 2003.)   In contrast, Defendants' expert witness, Brett Margolin, Ph.D.,

testified that the damages caused by Plaintiff's alleged infringement in the counterclaim

was $538,705.  (Trial Tr. vol. 5, 127, Mar. 11, 2003.)

Defendants argue that the jury's verdict is excessive on several grounds.  First,

they argue that the only expert to testify as to damages of approximately $500,000 was

the Defendants' expert, who testified as to the damages Old West Cowboy Boots

Corporation suffered in their counterclaim for trademark infringement.  (Trial Tr. vol. 5,

127, Mar. 11, 2003.)  Furthermore, the Defendants argue that there was confusion within

the jury, as they requested the expert reports during deliberation, but were not supplied

with any reports, as none were entered into evidence during the course of the trial.  (Trial

Tr. vol. 7, 56, Mar. 13, 2003.)  The jury also entered a monetary award for the Defendants on their verdict slip, but crossed it out.  (Doc. 205.)  Based on these facts, Defendants argue that the size of the jury's verdict was excessive.

Plaintiff counters with several arguments.  Plaintiff argues that the amount of $82,417 did not take into account sales through the date of the verdict, nor did it take into account the profits of any Defendant besides the company of Old West Cowboy Boots Corporation.  Plaintiff further argues that the Court's jury instruction did not limit the jury to an award matching the Plaintiff's expert's testimony.  Furthermore, the Plaintiff argues that the verdict was not against the weight of the evidence, as Defendant's expert Brett Margolin also specifically addressed the sales numbers of Old West Cowboy Boots Corporation and Jama Corporation.  (Trial Tr. vol. 6, 129, Mar. 11, 2003.)  He noted that in 1999, Old West Cowboy Boots Corporation sold $1.3 million in sales, while Jama Corporation sold $1.5 million. (Trial Tr. vol. 6, 129, Mar. 11, 2003.)   In the year 2000, Margolin noted that Old West Cowboy Boots Corporation had approximately $400,000 in sales of boots.

Due to the difficulty in calculating an actual division of profits by the infringer, "courts often assumed or presumed that the infringer's profits consisted entirely of profits on sales that would have been made by plaintiff but for the infringing actions." MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:59 (4th ed.)  In calculating the determination of profits, "it is the infringer's burden to prove any proportion of his total profits which may not have been due to the use of the infringing mark."  *Id.* § 30:65. Three rationales support an award of trademark damages: (1) such damages are a measure of the plaintiff's damages; (2) the infringer has been unjustly enriched; and (3) it

is required to deter a willful infringer from infringing again.  *Id.* § 30:59.  In a case where "infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff."  *Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994).

This motion is brought pursuant to both Rule 59 and Rule 60.  For the Defendants to succeed in the granting of a new trial, Defendants must demonstrate that the size of the verdict is against the weight of the evidence.  *See Maylie,* 791 F. Supp. at 480.  Defendants request in the alternative that the motion should be altered or amended pursuant to Rule 59(e).  To alter or amend the judgment, the Defendants must show the need to prevent a clear error of law or manifest injustice.  *See Max's Seafood Cafe*, 176 F.3d at 677  (citing *North River Ins. Co.,* 52 F.3d at 1218).  Finally, Defendants request relief from final judgment based upon Rule 60, which permits the Court to "relieve a party from a final judgment" for a number of reasons, including "mistake, inadvertence, surprise, or excusable neglect," because the judgment is "void," and "any other reason that justifies relief."  FED. R. CIV. P. 60(b)(1-6).

In this case, the jury's verdict is not against the weight of the evidence, does not create a manifest injustice, or otherwise justify relief.  The Plaintiff and Defendants had reciprocal trademark infringement claims - each argued that one had infringed the other's trademark, and had been damaged by such infringement.  However, the jury was not required to grant the exact amounts of profits offered by Plaintiff's expert.  Plaintiff's expert stated that Defendants' sales were in the range of $700,000.  The jury could reasonably had determined that the Defendants' profits were greater than $82,000, and therefore

awarded the $510,000.   Therefore, the Court will deny the Defendants' motions, and the jury verdict of $510,000 will stand.

## V.    Trebling of Damages for Trademark Infringement

Defendants argue in their Rule 59 and 60 motions that the trebling of the jury verdict in the trademark infringement claim was improper.  The Court entered judgment for the Plaintiffs in the amount of $1,530,000, trebling the amount of damages awarded by the jury of $510,000.  (Doc. 208.)

Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), states in part that

> [i]n assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter for such sum as the court shall find to be just, according to the circumstances of the case.

15 U.S.C. § 1117(a).  "Section 1117(a) grants a district court a great deal of discretion in fashioning an appropriate remedy in cases of trademark infringement."  *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1186, 1191 (6th Cir. 1997).  Section 1117(a) creates a clear divide between two types of recovery - profits and damages.  With respect to damages, Section 1117(a) provides that the court may enter judgement for any sum found as actual damages, and award no more than three times that amount.  15 U.S.C. § 1117(a).  The Lanham Act also gives clear direction with respect to the calculation of recovery of profits.  With respect to profits, the Lanham Act provides that if the court finds the recovery on profits to be excessive or inadequate, the court may enter any sum that it finds to be just.  15 U.S.C. § 1117(a).  Therefore, the Court's constraints on damages do

not exist in the calculation of profits.

The parties also address 15 U.S.C. § 1117(b) in their discussion on the trebling of damages. Section 35 of the Lanham Act, 15 U.S.C. § 1117(b) provides for automatic trebling of damages in the case of counterfeiting. Plaintiff argues that Section 1117(b) is relevant here because the Defendants engaged in "counterfeiting." However, a "counterfeit" is defined by the Lanham Act as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The mark "Old West" is not a registered mark within the meaning of the Lanham Act, as the mark was not registered in the United States Patent and Trademark Office. 15 U.S.C. § 1127. Therefore, the damage awards prescribed by 15 U.S.C. § 1117(b) are inapplicable to the present case.

In the present case, the trebling of damages would result in a very high award for the Plaintiff, and would result in a manifest injustice. If the Court finds the recovery on profits to be excessive or inadequate, the Court may enter any sum it finds to be just. 15 U.S.C. § 1117(a). In this case, the sum of $1,530,000 is far greater than any amount presented by the parties with respect to damages. The Lanham Act does not provide for punitive damages; rather, such damages are meant to be compensatory and to make the infringed party whole. Such a sum would go beyond the compensatory nature of the Lanham Act's damages provision. Therefore, the Court will amend the judgment so that damages are not trebled, and the judgment will read to be $510,000, the amount awarded by the jury.

**VI.      Motions for Stay of Proceedings to Enforce Judgment**

Defendants have filed several motions to stay the enforcement of the judgment

pursuant to Federal Rule of Civil Procedure 62(b).  (Docs. 210, 243, 248, 250, 252.)  Rule

62(b) provides that

> [o]n appropriate terms for the opposing party's security, the
> court may stay the execution of a judgment - or any
> proceedings to enforce it - pending the disposition of any of the
> following motions: (1) under Rule 50, for a judgment as a
> matter of law; (2) under Rule 52(b), to amend the findings or
> for additional findings; (3) under Rule 59, for a new trial or to
> alter or amend a judgment; or (4) under Rule 60, for relief from
> a judgment or order.

FED. R. CIV. P. 62(b).  The Order accompanying this Memorandum disposes of all pending

motions pursuant to Rules 50, 59, and 60.  Therefore, the Court will deny Defendants'

requests as moot.


## CONCLUSION

For the reasons stated above, the Defendants' various motions will be granted in

part and denied in part**.**  First, the Defendants' motions for a new trial and for judgment as

a matter of law based on Plaintiff's alleged failure to properly demonstrate first use in their

trademark infringement claim will be denied, as the Plaintiff properly demonstrated first

use for purposes of trademark infringement.  Second, Defendants' motion for a new trial

based on the argument that the Court improperly failed to instruct the jury as to secondary

meaning in a trademark infringement case will be denied, as the Plaintiff's mark is a

suggestive mark not requiring secondary meaning.  Third, the Defendants' motion for a

new trial or for judgment as a matter of law that the finding of willfulness in the trademark

infringement claim was against the weight of the evidence will be denied, as the jury's

verdict was based upon substantial evidence.  Fourth, the Defendants' motion for a new

trial, to amend, or to alter the judgment that the jury verdict of $510,000 for trademark infringement was not excessive, and therefore will be denied.  Fifth, the Defendants' motion for a new trial, to amend, or to alter the judgment based on the Court's improper trebling of the Plaintiff's damages on the trademark infringement claim will be granted, as the trebling of damages in this case would be unjust.  Finally, the Court will deny the Defendants' five (5) motions to stay as moot, as the Court has decided the pending Rule 59 and Rule 60 motions.

An appropriate Order follows.


January 2, 2008_____                    _____/s/ A. Richard Caputo_____
Date                                      A. Richard Caputo
                                          United States District Judge

31

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMA CORPORATION et al.,

      Plaintiffs,

        v.

DR. GIRIWARLAL GUPTA, et al.,

      Defendants.

NO. 3:99-CV-01624

consolidated under 3:99-CV-1574

(JUDGE CAPUTO)

## ORDER

**NOW**, this 2nd   day of January, 2008, **IT IS HEREBY ORDERED** that:

(1)    Defendants' motion for temporary partial relief of judgment, or alteration of judgment under Rules 59 and 60 pending the resolution of all post-trial and other motions (Doc. 213) is **DENIED**.

(2)    Defendants' motion under Rule 50 for judgment as a matter of law (Doc. 218) is **DENIED**.

(3)    Defendants' combined motion for a new trial, and/or to amend, alter or modify the judgment, and/or for relief from judgment (Doc. 209) is:

      (a)    **DENIED** with respect to the Defendants' motion for a new trial based upon the element of first use in trademark infringement.

      (b)    **DENIED** with respect to the Defendants' motion for a new trial based upon the Court's jury instructions.

      (c)    **DENIED** with respect to the Defendants' motion based upon the jury's finding of willfulness in the trademark infringement claim.

      (d)    **DENIED** with respect to the Defendants' motion based upon the jury

verdict of $510,000 in the trademark infringement claim.  A new trial

will be scheduled solely on the basis of the damages claim on

infringement.

(e)  **GRANTED** with respect to the Court's trebling of the trademark

damages, and the judgment for trademark damages (Doc. 208) is

amended to $510,000.

(4)  Defendants' motions to stay pursuant to Federal Rule of Civil Procedure

62(b) (Docs. 210, 243, 248, 250, 252) are **DENIED** as moot.


_____           /s/ A. Richard Caputo
                           A. Richard Caputo
                           United States District Judge