**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMA CORPORATION et al.,

    Plaintiffs,

        v.

DR. GIRIWARLAL GUPTA, et al.,

    Defendants.

NO. 3:99-CV-01624

consolidated under 3:99-CV-1574

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Plaintiff's post-trial motion for attorneys' fees and costs pursuant to Section 35 of the Lanham Act.  (Doc. 224.)  For the reasons set forth below, the Court will grant in part and deny in part Plaintiff's motion for attorneys' fees and costs.  The Plaintiff is entitled to attorneys' fees pursuant to the Lanham Act, but the Court will apportion the fees for failed claims, as the claims are not so intertwined that the factual and legal bases of the claims are the same.  The Court will grant in part and deny in part the Plaintiff's requests for costs, as some of the costs are not permitted by 28 U.S.C. § 1920, and other costs are not properly documented.

## BACKGROUND

The present motion requests attorneys' fees and costs for Jama Corporation in civil actions 3:99-CV-1574 and 3:99-CV-1624.  Three issues were initially brought to trial in action 3:99-CV-1624.  On a Rule 50 motion, the Court disposed of the first claim for tortious interference with contractual relations.  On March 13, 2003, after trial, the jury entered a verdict in favor of the Plaintiff Jama Corporation in action 3:99-CV-1624 for

breach of contract and trademark infringement.  (Doc. 205.)  On June 19, 2003, the Court

entered judgment for the Defendants in civil action 3:99-CV-1574.  (Doc. 235.)  Plaintiff

requests an award of attorneys' fees and costs in the amount of $652,272.93.  This

motion is fully briefed and ripe for disposition.


**DISCUSSION**

**I.    Attorneys' Fees**

A.    Appropriateness of Attorneys' Fees

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases

may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).

However, Section 35(a) does not explicitly define the meaning of an "exceptional case[ ]."

The Third Circuit Court of Appeals has recently determined that finding exceptional

conduct requires a two-step inquiry.  *Green v. Fornario*, 486 F.3d 100, 103 (3d Cir. 2007).

First, the district court must determine if there was any culpable conduct, such as "bad

faith, malice or knowing infringement" on the part of the losing party.  *Id.* (citing *Ferrero*

*U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir. 1991); *SecuraComm*

*Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 280 (3d Cir. 2000)).  Second, the court

must determine if the circumstances are "exceptional" enough to warrant an award.  *Id.*

A court may not award fees without finding culpable conduct, but it may decline to award

them despite such conduct based upon the totality of the circumstances.  *Id.*

A finding of culpable conduct for the awarding of attorney fees is reliant upon the

specific facts of the case.  *SecuraComm*, 224 F.3d at 280.  In this case, the Plaintiff has

demonstrated culpable conduct.  The jury reached a verdict finding that the Defendants

2

actions were "willful," which is conduct capable of supporting an award for attorneys' fees.

If culpable conduct exists, the court must then determine if the case is "exceptional."   When determining if a case is exceptional, the court may consider factors such as "the closeness of the liability question and whether the plaintiff suffered damages." *Green*, 486 F.3d at 103-04 (citing *Ferrero,* 952 F.2d at 49).  The Plaintiff has demonstrated that the case is exceptional for purposes of recovering attorneys' fees, as the jury awarded damages for the willful infringement by the Defendants.  Therefore, the Court will award the Plaintiff attorneys' fees pursuant to the Lanham Act.

B.    Apportionment

Defendants argue that apportionment of the attorneys' fees is appropriate in this case.  First, Defendants argue that Plaintiff should not recover for attorneys' fees in civil action 3:99-CV-1574, as Jama Corporation was not a prevailing party in that action. Plaintiff counters that the action 3:99-CV-1574 was substantially identical to the action in 3:99-CV-1624, and therefore apportionment is not required.  Plaintiff cites *Aamco Transmissions v. Graham*, Civ. A. Nos. 89-497, 89-6379, 1990 WL 118050, at *3 (E.D. Pa. Aug. 9, 1990) for the proposition that if the claims are so intermingled that the factual basis and legal theories are the same, the court need not apportion the Lanham Act and non-Lanham Act claims.

Plaintiff Jama Corporation was not a "prevailing party" in action 3:99-CV-1574. The term "prevailing party" is a legal term of art, and requires a party to "succeed on 'any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit.'" *Wheeler by Wheeler v. Towanda Area Sch. Dist.*, 950 F.2d 128, 131 (3d Cir. 1991) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The *Wheeler* court

then applied a two part test consistent with *Hensley*: (1) whether the plaintiffs achieved

relief, and (2) whether there was a causal connection between the litigation and the relief

from the defendant. *Id.*  In this case, Plaintiff Jama Corporation was not a plaintiff that

achieved relief.  The listed plaintiffs in action 3:99-CV-1574 were Rajiv Jalan, Rishi Jalan,

and Pushpa Jalan.  Furthermore, judgment in that case was in favor of the defendants.

(Doc. 235.)  Although many of the same attorneys worked on both cases, the two cases

involved different clients and different claims.  Furthermore, the factual and legal bases of

action 3:99-CV-1574 focused on the ownership of the Old West Cowboy Boots

Corporation stock, and the potential imposition of a constructive trust, whereas the action

3:99-CV-1624 was based upon trademark infringement and breach of contract.  These

claims are not so intermingled that apportionment is impossible.  Therefore, Plaintiff

Jama Corporation is not entitled to the attorneys' fees for work on the action 3:99-CV-

1574, and the Court will apportion the fees and costs between the two actions.

Defendants also request apportionment of the attorneys' fees between the

successful Lanham Act claim and the other claims in 3:99-CV-1624, namely, the breach

of contract and tortious interference claims.  Although the Third Circuit Court of Appeals

has not ruled as to the requirement of apportionment between Lanham Act and non-

Lanham Act claims, numerous courts have held that apportionment is required.  *See*

*Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000) ("[A]s a general matter, a prevailing

party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys'

fees only for work related to the Lanham Act claims."); *U.S. Structures, Inc. v. J.P.*

*Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) ("[U]nder 15 U.S.C. § 1117(a),

attorneys' fees are recoverable only for work performed with claims filed under the

4

Lanham Act."); *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 531 (5th Cir. 2002);

*Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1011 (S.D. Tex.

2000) ("In [trademark] cases in which attorneys fees are awarded as to some claims and

denied as to others, an apportionment of attorneys fees is proper.").

However, the Third Circuit Court of Appeals has discussed apportionment

generally.  Citing Supreme Court precedent, the Third Circuit Court of Appeals has held

that "where a plaintiff presents 'distinctly different claims for relief that are based on

different facts and legal theories . . . work on an unsuccessful claim cannot be deemed to

have been expended in pursuit of the ultimate result achieved.'" *Eichenlaub v. Twp. of

Indiana*, 213 Fed. App'x 218, 222 (3d Cir. 2007) (non-precedential) (quoting *Hensley v.

Eckerhart*, 461 U.S. 424, 434-35 (1983)).  The Third Circuit Court of Appeals has further

held that attorneys' fees may be reduced for time "spent litigating claims on which the

party did not succeed and that were distinct in all respects from claims on which the party

did succeed."  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

Therefore, the Third Circuit Court of Appeals requires apportionment of distinct

claims when a claim is unsuccessful.  Plaintiff's claim for tortious interference of business

for contractual relations was unsuccessful, and the Court disposed of the count in the

Rule 50 motion after the close of Plaintiff's case-in-chief.  (Trial Tr. vol. 4, 5, Mar. 7,

2003.)  A claim for tortious interference with contractual relations is a distinct claim from

one of trademark infringement.  The wrongful encouragement of one to enter or not to

enter into a contract or business relationship is an actionable tort.  *See Thompson Coal

Co. v. Pike Coal Co.*, 412 A.2d 466, 470 (Pa. 1979).  The elements to prove such

interference are: (1) a prospective contractual relation; (2) purpose of intent to harm the

plaintiff by preventing the relation from occurring; (3) the absence of privilege of justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct.  *Id.* at 471.  These elements are distinct from a trademark infringement claim, as they require the interference with some contractual relation.  A trademark infringement claim is distinct from such a contractual claim, and therefore, the Court will apportion the attorneys' fees and costs for this failed claim.

_____Plaintiff was successful on the breach of contract claim, which alleged breach of contract based upon the failure of Old West Cowboy Boots Corporation to pay five (5) Bills of Exchange to Jama Corporation.  However, Plaintiff is not entitled to these fees based upon the intermingling of this claim with the trademark infringement claim.  Breach of contract is distinct from the trademark infringement claim, as this claim specifically dealt with whether the Defendant breached its contract with the Plaintiff regarding the Bills of Exchange.  Furthermore, Plaintiff is not entitled to recover attorneys' fees for the breach of contract claim, even though the Plaintiff was successful on the claim. Pennsylvania has adopted the American Rule, whereby attorneys' fees are generally not a taxable item of costs except as permitted by statute.  *See Krassnoski v. Rosey,* 684 A.2d 635, 637 n.2 (Pa. Super. Ct. 1996) (citing 42 PA. CONS. STAT. ANN. § 1726(a)(1)). Plaintiffs have not identified a statutory basis for their request for attorneys' fees for the breach of contract claim.  In *Yellow Transp., Inc. v. DM Transp. Mgmt. Servs., Inc.*, 2006 WL 2871745, at *4 (E.D. Pa. July 14, 2006), the court did not permit attorneys' fees for breach of contract, noting that there was no provision in the contract for such fees, and there was no statutory authority permitting them.  The court held that "[t]his Court has consistently followed the general, American rule that there can be no recovery of

attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception." *Id.* (quoting *Merlino v. Delaware County*, 728 A.2d 949, 951 (Pa. 1999)).  Therefore, Plaintiff may not recover attorneys' fees on the basis of its breach of contract claim, as there is no provision for such fees in statutory authority or other agreement.  The Court will therefore apportion the fees and costs accordingly.

C      Multiple Counsel

Plaintiff makes a claim for attorneys' fees for multiple sets of counsel.  The counsel includes Ullman, Shapiro & Ullman, LLP; D. Bruce Hanes & Associates, P.C., Foley, Cognetti, Comerford & Cimini; and Khaitan & Company.  Other trademark infringement cases have awarded attorneys' fees for more than one law firm, including lead counsel, local counsel, and in-house counsel.  *See Tamko Roofing Prod., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 34 (1st Cir. 2002); *Louis Vuitton, S.A. v. Ummat's*, Civ. A. Nos. 1:87-CV2660HTW, 1:88CV2745HTW, 1992 WL 317523, at *5 (N.D. Ga. Feb. 10, 1992) (awarding fees to lead and local counsel).  Therefore, Plaintiff may make a claim for attorneys' fees for lead and local counsel.

However, Plaintiff may not recover attorneys' fees for the Indian law firm of Khaitan & Company.  One of the firm's attorneys, M.P. Rao, testified at trial and acted as an expert witness on the subject of Indian law.  Khaitan & Company is not a law firm for the purposes of attorneys' fees.  Rather, they served as experts in the field of Indian law. In Plaintiff's pre-trial brief on a motion in limine, the Plaintiff argued for the inclusion of M.P. Rao's testimony at trial.  (Doc. 181.)  Specifically, the Plaintiff argues in favor of permitting a "foreign law expert" to testify.  (Doc. 181.)  Thus, even the Plaintiff has

characterized M.P. Rao as an expert.  Furthermore, neither M.P. Rao, Tushna Thapliyal, nor any other attorney from the law firm of Khaitan & Company ever made an appearance in the case as an attorney for the plaintiffs.  Such actions demonstrate that Khaitan & Company acted in the capacity of experts in the field of Indian law, and not as attorneys.  Plaintiff may not reap the benefit of attorneys' fees for an expert witness, even if the expert witness is an attorney.  Therefore, recovery for Khaitan & Company will be considered a cost.

D.     Computation and Reasonableness

The United States Supreme Court has held that the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *Blum v. Stetson*, 465 U.S. 886, 888 (1984).  This amount is known as the "lodestar" figure, which is presumed to be the reasonable fee.  *Pennsylvania v. Delaware Valley Citizens' Counsel*, 478 U.S. 546, 565 (1986); *Pennsylvania v. Delaware Valley Citizens' Counsel*, 483 U.S. 711, 730-31 (1987).

In calculating the reasonable rate, the Court looks to the prevailing market rates in the relevant community.  *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).  The Court should considered the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  The prevailing party bears the burden of demonstrating that the requested hourly rates are reasonable.  *Id.*

The Court must also determine whether the number of hours spent on the litigation

was a reasonable number of hours.  The Court "should review the time charged, decide whether the hours claimed were reasonably expended for each for the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citations omitted).  Thus, a trial court will "exclude from this initial fee calculation hours that were not reasonably expended on the litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).   Thus, using the lodestar methodology, the Court can calculate a reasonable attorneys' fee.

      1.     Ullman, Shapiro & Ullman, LLP

Plaintiff first claims attorneys' fees of $423,907.85 from the firm of Ullman, Shapiro & Ullman, LLP.  (Cavanaugh Aff. ¶ 4, Apr. 11, 2003, Doc. 225.)  The records submitted by Ullman, Shapiro & Ullman do not distinguish between work done on action 3:99-CV-1574 and work done on action 3:99-CV-1624.   Included in the invoices for Ullman, Shapiro & Ullman are records of disbursements for investigative fees; filing fees; LEXIS research; courier, messenger and postage; local and out-of-town travel; photocopying; long distance telephone and facsimile; deposition transcripts; and out-of-town lodging expenses.  (Cavanaugh Aff. ¶ 6, Apr. 11, 2003, Doc. 225.)

Numerous attorneys billed hours for Ullman, Shapiro & Ullman.  These attorneys were Dennis Cavanaugh, Elizabeth S. Gioiosa Dillabough, Steven Shapiro, Marc S. Ullman, Vanessa Riviera, and an unnamed law clerk.  Plaintiff has submitted a firm-by-firm sampling of billing rates nationwide.  (Ex. 225 Doc. H.)  This sampling of billing rates included the 2002 rates for other New York City law firms, including Kelley Drye & Warren and Kramer Levin Naftalis & Franke.  Rates for these firms ranged from one-hundred and

eighty dollars ($180.00) to five-hundred and ninety dollars ($590.00) in the year 2002.

Upon review of the billing rates of these firms, the Court finds that the billing rates for

their attorneys and law clerk are also within this range, and therefore are reasonable,

considering the experience and skill of the attorneys, and comparing the rates to those

prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation.

Dennis Cavanaugh billed twenty-four (24) hours in the year 1999, at a rate of two-

hundred dollars ($200.00) per hour.  His total bill for 1999 was four-thousand, eight-

hundred dollars ($4,800.00).  In 2000, Mr. Cavanaugh's rate increased to two-hundred

and fifteen dollars ($215.00) per hour.  He billed two-hundred and twenty-five and three-

quarters hours (225.75), for a total bill of forty-eight thousand, five-hundred and thirty-six

dollars and twenty-five cents ($48,536.25).  In 2001, Mr. Cavanaugh's rate increased to

two-hundred and forty dollars ($240.00) per hour.  He billed five-hundred and twenty-

three and three-tenths hours (523.30) in 2001, for a total charge of one-hundred twenty-

five thousand, five-hundred and ninety-two dollars ($125,592.00).  In 2002, Mr.

Cavanaugh's rate increased to two-hundred and sixty dollars ($260.00) per hour.  That

year, Mr. Cavanaugh billed two-hundred and seventy-seven and one-tenth (277.10)

hours, for a total bill of seventy-two thousand and forty-six dollars ($72,046.00).  Finally,

in 2003, Mr. Cavanaugh's rate was two-hundred and seventy-five dollars ($275.00) per

hour, and he billed three-hundred seventy-seven and three-tenths (377.30) hours.  His

total bill for 2003 was one-hundred and three-thousand, seven-hundred and fifty-seven

dollars and fifty cents ($103,757.50).  Mr. Cavanaugh's total bill for the years 1999

through 2003 was three-hundred fifty-four thousand, seven-hundred thirty-one dollars

and seventy-five cents ($354,731.75).  Although the Court has found his rates to be

reasonable, the number of hours submitted must be apportioned.  The records submitted

to the Court do not differentiate between billing between matters 3:99-CV-1574 and 3:99-

CV-1624.  Thus, the number of hours submitted by the Plaintiff is unreasonable, as all

work was not directed towards the Lanham Act claim.  Furthermore, some of the entries

included in his records were vague, such as "Draft documents" on September 9, 2001.

Therefore, the Court will apportion the fees by fifty percent (50%), and award one-

hundred seven-hundred seventy thousand, three-hundred and sixty-five dollars and

eighty-seven cents ($177,365.87).

Elizabeth S. Gioiosa Dillabough billed hours in the years 2000, 2001, and 2002.  In

2000, her rate was one-hundred and sixty-five dollars ($165.00), and she worked seventy

and six-tenths (70.60) hours, for a charge of eleven-thousand, six-hundred and forty-nine

dollars ($11,649.00).  In 2001, her rate was one-hundred and seventy-five dollars

($175.00), and she worked seventy-one and six-tenths (71.60) hours, for a charge of

twelve-thousand, five-hundred and thirty dollars ($12,530.00).  Finally, in 2002, Ms.

Dillabough's rate was one-hundred and eighty dollars ($180.00), and she worked three-

tenths (.30) of one hour, and charged fifty-four dollars ($54.00).  Ms. Dillabough's total

charge was twenty-four thousand, two-hundred and thirty-three dollars ($24,233.00).

Again, although Ms. Dillabough's rate was reasonable, her hours are unreasonable

based upon the fact that these hours do not distinguish between work on action 3:99-CV-

1574 and action 3:99-CV-1624.  Therefore, the Court will apportion her hours by fifty

percent (50%), and award twelve-thousand, one-hundred and sixteen dollars and fifty

cents ($12,116.50).

Steven Shapiro had minor involvement in this case.  In 2000, he billed one-tenth of an hour, at a rate of two-hundred and thirty-five dollars ($235.00), for a charge of twenty-three dollars and fifty cents ($23.50).  In 2001, he billed four and one-tenth (4.10) hours at a rate of two-hundred and sixty dollars ($260.00) per hour, for a charge of one-thousand and sixty-six dollars ($1,066.00).  In 2002, he billed four-tenths (.40) of one hour at a rate of two-hundred and seventy-five dollars ($275.00), for a charge of one-hundred and ten dollars ($110.00).  Finally, in 2003, he charged seven-tenths (.70) of an hour at a rate of two-hundred and ninety-five dollars ($295.00) per hour, for a charge of two-hundred and six dollars and fifty cents ($206.50).  His total bill for the case was one-thousand, four-hundred and six dollars ($1,406.00).  Although Mr. Shapiro's rate was reasonable, his hours are unreasonable based upon the fact that these hours do not distinguish between work on action 3:99-CV-1574 and action 3:99-CV-1624.  Therefore, the Court will apportion his hours by fifty percent (50%), and award seven-hundred and three dollars ($703.00).

_____Marc S. Ullman also had minor involvement in this case.  In 2000, he charged one (1.00) hour of time, at a rate of two-hundred and thirty-five dollars ($235.00) per hour, for a total charge of two-hundred and thirty-five dollars ($235.00).  In 2001, he billed three-tenths (.30) of one hour, at a rate of two-hundred and sixty dollars ($260.00) per hour, for a total charge of seventy-eight dollars ($78.00).  Mr. Ullman's total bill for this case was three-hundred and thirteen dollars ($313.00).  As his records do not distinguish between matters 3:99-CV-1574 and 3:99-CV-1624, his fee will be apportioned by fifty percent (50%), and he will be awarded one-hundred and fifty-six dollars and fifty cents ($156.50).

In 2003, Vanessa Riviera billed fifteen and one-half (15.50) hours at a rate of one-

12

hundred and fifty dollars ($150.00) per hour, for a total bill of $2,325.00.  She did not bill any time earlier than 2003.  The hours billed by Ms. Riviera are generally duplicative and unnecessary.  Her entries include broad statements such as "Review litigation documents," "Review documents for Exhibit list," "Review pleadings," "Review trial exhibits," and "Review trial exhibits & documents."  (Doc. 225 Ex. D.)  Such entries will be disregarded, and her total number of hours will be reduced to eight (8) hours for various research assignments on trademark law.  Her rate of one-hundred and fifty dollars ($150.00) per hour is reasonable, and therefore her total will be one-thousand, two-hundred dollars ($1,200.00).

Finally, Ullman, Shapiro & Ullman had an unnamed law clerk who billed time to this matter in 2000, 2001, and 2002.  In *Missouri v. Jenkins*, 491 U.S. 274, 284-85 (1989), the Supreme Court permitted the services of non-lawyers, such as law clerks, secretaries, and messengers who contribute to attorney work-product to be included in the awarding of attorneys' fees.  *Id.*  Therefore, these charges will be permitted.  In 2000, the law clerk billed twenty-three and one-half (23.50) hours at a rate of fifty dollars ($50.00) per hour.  The total charge for 2000 was one-thousand, one-hundred and seventy-five dollars ($1,175.00).  In 2001, the law clerk billed one-hundred, fifty-eight and seven-tenths (158.70) hours at a rate of fifty-five dollars ($55.00) per hour.   The total charge for 2001 for the law clerk was eight-thousand, seven-hundred and twenty-eight dollars and fifty cents ($8,728.50).  Finally, in 2002, the law clerk billed thirty and eight-tenths (30.80) hours at a rate of sixty dollars ($60.00) per hour.  The total charge for the law clerk for 2002 was one-thousand, eight-hundred and forty-eight dollars ($1,848.00).  The total charge for the law clerk for the three (3) years is eleven-thousand, seven-

hundred and fifty-one dollars and fifty cents ($11,751.50).  The invoice did not distinguish between work done for action 3:99-CV-1574 and action 3:99-CV-1624.  Therefore, although the rate for the law clerk was reasonable, the hours are not.  The Court will apportion these fees by fifty percent (50%), and award five-thousand, eight-hundred and seventy-five dollars and seventy-five cents ($5,875.75).

        2.       D. Bruce Hanes and Associates, P.C.

        Plaintiff claims fees of $20,625.00 for the services of D. Bruce Hanes and Associates, P.C.  This law firm originally represented the Plaintiffs and filed the original complaints in this action.  (Cavanaugh Aff. ¶ 7, Apr. 11, 2003, Doc. 225.)  The party petitioning for attorneys' fees has the burden of demonstrating that the rates and number of hours are reasonable.  *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 554 (1993).  Defendant objected to the requested attorneys' fees and costs, in part based upon the description of tasks submitted by the Plaintiff.  In the case of the fees claimed by D. Bruce Hanes and Associates, the Plaintiff has failed to show that he charged a reasonable rate or spent a reasonable number of hours on the litigation.  In fact, Plaintiff failed to give any rate or number of hours spent by D. Bruce Hanes and Associates on this litigation.  (Doc. 225 Ex. C.) Furthermore, the letter submitted gives no detail as to the type of activity billed for. (Doc. 225 Ex. C.)  Therefore, the Court will deny the Plaintiff's request for attorneys' fees by D. Bruce Hanes and Associates.

        3.       Foley, Cognetti, Comerford & Cimini

        Plaintiff also claims fees for the law firm of Foley, Cognetti, Comerford & Cimini in the amount of $74,894.95.  (Cavanaugh Aff. ¶ 8, Apr. 11, 2003, Doc. 225.) Included in this amount is a list of costs for photocopies, postage, telephone calls, UPS, facsimiles,

14

service attempts, and fees for appearances at depositions in the amount of $1,024.95. (Doc. 225 Ex. D.)  Counsel for Plaintiff also notes that Plaintiff's request includes an adjustment to deduct amounts for post-trial services.  In Plaintiff's affidavit, Plaintiff notes that the fee should be decreased by one-thousand and seven-hundred dollars ($1,700.00) for eight and one-half (8.5) hours of post-trial work.  Therefore, the total amount of fees excluding costs claimed amounts to seventy-three thousand, eight-hundred and seventy dollars ($73,870.00) for a total of approximately three-hundred and sixty-nine and one-third (369.35) hours.  The services are listed at a rate of two-hundred dollars ($200.00) per hour.

However, there are several problems with the submitted invoices by Foley, Cognetti, Comerford & Cimini.  The records submitted by Foley, Cognetti, Comerford & Cimini do not distinguish between work done on action 3:99-CV-1574 and work done on action 3:99-CV-1624.  Nor do the records specify the attorney performing the work on each entry.

The Third Circuit Court of Appeals has noted that to satisfy its burden, the fee petitioner "must 'submit evidence supporting the hours worked and the rates claimed.'" *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n. 5 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Furthermore, the Supreme Court has held that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433.  The failure of the fee petitioner to distinguish which attorney performed what services makes it difficult for the Court to determine whether the hours spent were reasonably expended.  The Supreme Court

15

requires that a district court exclude from the fee calculation hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434.  As stated previously, it is difficult for the Court to determine whether the hours are reasonable, based upon the fact that the fee petitioner did not distinguish hours spent on action 3:99-CV-1574 from hours spent on action 3:99-CV-1624.  Furthermore, it is difficult to determine whether the rate was reasonable, as the Court has no information as to which attorneys performed the various services.

However, the fee petitioner has provided a break-down of the services, including the amount of time expended on each task, and a description of the work performed.  As some, but not all, of the relevant documentation has been provided, the Court will reduce the award in accordance with the *Hensley* ruling.  Defendants make no objection to the rate provided by the Plaintiff.  Two-hundred dollars ($200.00) per hour is a reasonable rate considering the experience and skill of the attorneys, and comparing the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  The Court takes judicial notice of the rates of other attorneys in the Middle District of Pennsylvania, and finds that this rate is reasonable for local counsel.  The However, the number of hours is unreasonable, given that the fee petitioner has failed to distinguish the attorney performing the work and the action the work is related to.  Therefore, the Court will apportion the fees of Foley, Cognetti, Comerford & Cimini, and reduce the fees by sixty percent (60%).  The Court will award fees in the amount of twenty-thousand, five-hundred and forty-eight dollars ($29,548.00).

## II.    Costs

_____To recover costs pursuant to the Lanham Act, a plaintiff need not establish any exceptional circumstances. *See* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:107.  Rather, the recovery of costs is "subject to the principles of equity." 15 U.S.C. § 1117(a).  Thus, the trial court has equitable discretion to award costs.  MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:107.

_____Taxable costs are set forth in 28 U.S.C. § 1920, which provides that

> [a] judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.  A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Federal statutory law further provides for the reimbursement of expert witness fees in 28 U.S.C. § 1821.  Section 1821(b) provides for a $40 attendance fee for expert witnesses, and Section 1821(c) and (d) provides for travel and subsistence allowances in conjunction with depositions and court appearances.  The Supreme Court has held that "a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory language to the contrary."  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987).  There has been no contract regarding expert witness fees, and the Lanham Act has no specific provision regarding the award of expert witness fees.

Plaintiff cites *West Virginia Univ. Hosp. v. Casey*, 885 F.2d 11, 33 (3d Cir. 1989), a

17

Third Circuit Court of Appeals case, for the proposition that "a district court has the equitable discretion to award expert witness fees above the amount provided in § 1821 if 'the expert's testimony is indispensable to determination of the case.'" *Id.* (quoting *Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d 201, 206 (3d Cir. 1981)).  However, Plaintiff failed to consider the final holding of the case, which stated "we believe that we are constrained by the language of *Crawford* to abandon our previous rule and to limit expert witness fees to thirty dollars a day.  Congress has chosen to legislate in this area and unless the statute under which expert witness fees are awarded expressly repeals the limits of sections 1920 and 1821(b), we must defer to legislative fiat."  *Id.* at 34.  Although the former rule of the Third Circuit Court of Appeals permitted fees beyond Section 1821, that rule has since been abrogated, and the Court is limited to the forty dollars ($40) per day as provided by Section 1821.

First, Plaintiff requests expert witness fees for ParenteRandolph, LLC.  Stephen Scherf of ParenteRandolph acted as the Plaintiff's damages expert.  Plaintiff requests $45,243.62 for the services of ParenteRandolph.  (Doc. 225 Ex. A.)  However, the total amount of fees claimed by the Plaintiff cannot be granted, as the Court is constrained by statute and the Supreme Court's holding in *Crawford.*  "Clearly, the statute under which plaintiff claims a right to costs - the Lanham Act - does not provide explicit authority to award expert witness fees as costs."  *Nugget Distrib. Co-op. Of America, Inc. V. Mr. Nugget, Inc.*, 145 F.R.D. 54, 58 (E.D. Pa. 1992) (discussing *Crawford* and refusing to permit expert fees above the statutory amount permitted by 28 U.S.C. § 1920).  Upon review of the invoices, many of the hours billed were not accredited to Mr. Scherf, the expert witness.  (Doc. 225 Ex. F.)  Numerous hours are accredited to other employees of

ParenteRandolph, including A. Bennett, A. Sonstein, E. Morris, R. Russo, A. Koppelman, and M. Bradford. (Doc. 225 Ex. F.)  These fees may not be recovered because there is no documentation showing that these persons attended court, and therefore they do not qualify as witnesses  *See* Local Rule 54.4(4).   However, Mr. Scherf is entitled to forty dollars ($40.00) for his attendance at trial.  According to his invoice, Mr. Scherf's attendance occurred on March 3, 2003 and March 6, 2003, and therefore Plaintiff is entitled to eighty dollars ($80.00) for his attendance.  Mr. Scherf's invoice of March 10, 2003 contains business expenses including expense for tolls, mileage, and parking.  However, according to Section 1821(c)(3), such charges require a receipt.  Furthermore, Mr. Scherf's invoice does not contain a mileage amount, rather, it contains a dollar amount.  As the Court cannot compute the mileage in accordance with 28 U.S.C. § 1821(c)(2), the Plaintiff's requests for travel expenses for ParenteRandolph will be denied.

Plaintiff also requests expert witness fees for Khaitan & Company, as M.P. Rao acted as an expert witness on Indian law.  According to the invoice for Mr. Rao, he was in attendance in the District Court on March 3, 4, 5, 6, 7, 10, 11, 12, and 13, 2003. (Doc. 225 Ex. E.)  Therefore, he is entitled to forty dollars ($40.00) per day, or three-hundred and sixty dollars ($360.00) total for his attendance. Although in his affidavit, Mr. Cavanaugh states that Ms. Tushna Thapliyal also assisted in the case, there is no record of her attendance at trial, and therefore the Plaintiff may not recover her fees.  *See* Local Rule 54.4(4).  In a table submitted by the Plaintiff, Plaintiff asserts that Ms. Tushna and Mr. Rao spent 1,97,356.00 rupees in airfare from India for purposes of trial.  However, Plaintiff has submitted no receipt or other evidence of actual cost as required by 28

19

U.S.C. § 1821(c)(1).  Therefore, travel reimbursements for airfare will not be granted.

Pursuant to 28 U.S.C. § 1821(d), a subsistence allowance is permitted when an overnight

stay is required by the witness.  As Mr. Rao was in attendance from India, such an

allowance is awardable.  The receipt from the Radisson in Lackawanna Station in

Scranton lists Mr. Rao for a room charge of $139.00, and taxes of $8.34 and $5.56.

However, for the fiscal year 2003, the General Services Administration's maximum per

diem rate was $94.00 for lodging, meals, and incidental expenses.  Therefore, Plaintiff

will be awarded $94.00 for one day's subsistence.

Plaintiff further requests direct expenses incurred by the Plaintiff in connection with

the prosecution of this action.  These expenses include travel and subsistence costs of

all of its witnesses, including M.K., Rajiv, and Rishi Jalan, as well as costs for the

accountant deposition appearance, and Federal Express charges.

Witnesses called by the Plaintiff are further entitled to an attendance fee of forty

dollars ($40.00) for each day they testify, or if they do not testify, may receive fees if the

witness necessarily attends court.  Local Rule 54.4.(4).  Witnesses called by the Plaintiff

were M.K. Jalan, Rajiv Jalan, Rishi Jalan, Darel Kesner and Dan Stoker.  M.K. Jalan

testified on four days, March 4, 5, 11, and 12, 2003, and therefore will receive $160.00

for his attendance.  Rajiv Jalan also testified on three days, March 5, 6, and 10, 2003,

and therefore will also receive $120.00 for his attendance.  Darel Kesner, Dan Stoker,

and Rishi Jalan each testified one (1) day, on March 5 and 6, respectively, and therefore

will receive forty dollars ($40.00) each.  Plaintiff has not demonstrated that the witnesses

attended Court on any other day besides the days they testified, and therefore, the

witnesses will not receive any further witness fees.

The Federal Express charges will be disallowed, as witnesses are not permitted such costs under Section 1920.  The costs for the accountant deposition appearance is limited by Section 1821, and therefore the cost will be limited to forty dollars ($40.00) for one day's appearance.  Lastly, there are a number of expenses including airfare, car rental, gasoline, hotel, and meals.  Generally, parties may not collect witness fees.  *See Greene v. Fraternal Order of Police*, 183 F.R.D. 445, 450 (E.D. Pa. 1990).   However, other circuits have permitted the expenses of officers of a corporation when acting as witnesses, and the officers are not a party to the suit.  *See W.H. Smith Hotel Serv., Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 429-30 (7th Cir. 1994).  In action 3:99-CV-1624, Jama Corporation was the plaintiff.  Therefore, the Jalans may properly be characterized as witnesses, testifying on behalf of the corporation.  Therefore, the Jalans are entitled to travel and subsistence fees.  Plaintiff has submitted a chart of airline tickets, which include the airfare for Rajiv, Rishi, and M.K. Jalan.  However, the dates of the airfare are unexplained.  Plaintiff has failed to state whether these flights were for the purpose of depositions, meetings with counsel, or other reasons.  These unexplained flights, varying in dates from August 1999 to January 2003, will not be reimbursed as witness fees.  Plaintiff has failed in its burden of proof in showing that these costs were associated with depositions.  The Court notices that Plaintiff claims airfare on February 28, 2003 for M.K. and Rajiv Jalan, in the amounts of 2,10,949.00, 2,01,992.00, and 24,336.00 rupees, several days prior to trial.  However, Plaintiff failed to submit receipts for these flights in accordance with Section 1821(d).  Therefore, the Court will decline to reimburse the airfare on these dates as well.

Plaintiff has also submitted receipts for hotel and meal reimbursement.  For

21

example, Plaintiff has submitted a receipt for the Radisson at Lackawanna Station in Scranton for January 23rd and 24th, 2003.  However, Plaintiff has failed to specify the reason for this receipt.  As Plaintiff has failed to establish its burden of proof, this expense will be declined.  Similarly, Plaintiff submits receipts from the Radisson at Lackawanna Station in Scranton from April 2001.  Again, Plaintiff has failed to specify if such an expense is subject to reimbursement for witness subsistence costs.  Plaintiff also submitted a receipt for a car rental from April 2001 in the amount of four-hundred and twenty-one dollars and ninety-six cents ($421.96).  Plaintiff has failed to specify the purpose of this receipt, and whether the cost was in connection with witness subsistence.  Therefore, this cost will also be declined.

Plaintiff has also submitted an invoice from the Radisson at Lackawanna Station in Scranton for the dates February 28, 2003 through March 13, 2003.  This invoice includes room charges, meal charges, photocopy charges, facsimile charges, dry cleaning charges, and charges for long distance phone calls.  The witnesses are entitled to subsistence reimbursement, but they are not permitted charges such as photocopy charges, facsimile charges, dry cleaning charges, and charges for long distance phone calls.  Therefore, those costs will be declined.  The number of hotel rooms on the invoice varied from three (3) to seven (7) rooms during the span of almost two (2) weeks.  However, on the invoice, the name next to each hotel room simply states "Jalan."  Similarly, the affidavit submitted by the Plaintiff does not specify the witnesses for which the rooms and meals were charged.  Therefore, the Court will only provide for subsistence for the three members of the Jalan family, as "Jalan" is the only name specified on the receipt.  Charges begin on February 28, 2003, although the trial began

22

on March 4, 2003.  Therefore, the Court will disregard the charges for February 28, 2003, March 1, 2003, and March 2, 2003.  Rajiv, Rishi, and M.K. Jalan will be entitled to $94.00 per day subsistence as permitted by the General Services Administration's maximum per diem rate for Scranton, Pennsylvania.  M.K. Jalan will each receive a per diem for eleven (11) days, from March 3, 2003 through March 13, 2003.  He will each receive a per diem of one-thousand and thirty-four dollars ($1,034.00) for their subsistence for those dates. Rajiv Jalan only testified on the dates March 5, 6, and 10, 2003.  Therefore, he will receive subsistence for eight days, from March 4, 2003 through March 11, 2003, in the amount of $752.00.  Finally, Rishi Jalan only testified on one (1) day, March 6, 2003. Therefore, he will receive subsistence for three (3) days in the amount of $282.00.  The Plaintiff has failed to demonstrate that these particular witnesses have incurred any further costs.

Plaintiff has also submitted receipts for a rental car and gas.  The receipts show that one-thousand and twenty-seven dollars and fifty-five cents ($1,027.55) was paid for a rental car, and seventy-one dollars and fifty-two cents ($71.52) was paid for gas. Witnesses are permitted reimbursements for travel to the courthouse.  *See* 28 U.S.C. § 1821(c).  However, the car rental fee is excessive.  Furthermore, the Plaintiff submitted gasoline receipts, but did not submit any documentation of the mileage.   Therefore, these costs will be disallowed.

The invoice from Ullman, Shapiro & Ullman included a number of out-of-pocket disbursements.  The total amount of costs from the firm of Ullman, Shapiro & Ullman claimed is twenty-eight thousand, three-hundred and twenty-five dollars and twenty-five cents ($28,325.25).  The invoice included three-hundred and eighty-three dollars and

23

thirty cents ($383.30) for phone charges.  It also included a bill for six-thousand, four-hundred and thirty-five dollars and ninety-six cents ($6,435.96) in photocopy charges.  Another charge is for three-thousand, five-hundred and twenty-nine dollars and thirteen cents ($3,529.13) in fax charges.  A Lexis bill is included in the amount of five-thousand, eight-hundred and seventeen dollars and seventy-eight cents ($5,817.78).  Postage, federal express, and messenger fees were included in the amount of two-thousand, three-hundred thirty-four dollars and twenty-two cents ($2,334.22).  Office supplies were listed at one-hundred and sixty-two dollars and sixty cents ($162.60).  Typing and word processing fees were listed at seven-hundred and twenty-four dollars ($724.00).  Witness fees were included for a charge of two-hundred and ninety-five dollars ($295.00).  Investigative fees were listed as five-hundred and eighteen dollars and seventy-five cents ($518.75).  Travel and hotel expenses for the firm were listed at three-thousand, five-hundred and thirty dollars and fourteen cents ($3,530.14).  Other miscellaneous fees included two-hundred and two dollars and sixty cents ($202.60) for a deposition video, thirty-eight dollars ($38.00) for a working lunch and car ride home, fifteen dollars ($15.00) for a certificate of good standing, and three-hundred dollars ($300.00) to the U.S. Patent Office.  A fee of two-hundred and forty-five dollars ($245.00) was listed as filing fees, and one-hundred and four dollars and ninety-five cents ($104.95) was listed for service of process.  Court reporter services for the deposition was listed as three-thousand, six-hundred and eighty-eight dollars and eighty-two cents ($3,688.82).  However, services for Giriwirlal and Kiran Gupta were listed twice, and therefore the court reporter services will be reduced to two-thousand, five-hundred and ninety-nine dollars and eighty-two cents ($2,599.82).

_____The Third Circuit Court of Appeals has awarded out-of-pocket expenses as part of attorneys' fees in the civil rights context, and has held that out-of-pocket expenses may be included in attorneys' fees as "'incidental and necessary expenses incurred in furnishing effective and competent representation.'" *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of the State of New Jersey*, 297 F.3d 253 (3d Cir. 2002) (quoting Remarks of Congressman Drinan, 122 CONG. REC. H12160 (daily ed. 1 Oct. 1976) (permitting out-of-pocket expenses in a Section 1988 case).  However, the court has yet to rule on whether out-of-pocket expenses are permitted in the context of the Lanham Act.  In *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 726 F. Supp. 928 (S.D.N.Y. 1989), the Southern District fo New York noted that "[w]hile out-of-pocket costs are an appropriate element of the punitive damages award [for the tortious interference claim], there is less basis, and no authority cited, for including out-of-pocket costs under § 1117 which refers only to attorney's fees."  *Id.* at 928.  This Court therefore finds that the request for out-of-pocket expenses is unreasonable, and only taxable costs pursuant to Section 1920 will be permitted.  Therefore, the Court will permit an award for court reporting services, the filing fee, and photocopy fees.  The Court will apportion the award by fifty percent (50%), as the firm has not distinguished between costs for civil action number 3:99-CV-1574 and 3:99-CV-1624.  Therefore the Court will award one-thousand, two-hundred and ninety-nine dollars and ninety-one cents ($1,299.91) for court reporting services, one-hundred and twenty-two dollars and fifty cents ($122.50) for filing fee, and three-thousand, two-hundred and seventeen dollars and ninety-eight cents ($3,217.98) for photocopy fees.  Therefore, the total of taxable costs awarded to Ullman, Shapiro & Ullman is four-thousand, six-hundred and forty dollars and thirty-nine cents ($4,640.39).

Similarly, the invoice for Foley, Cognetti, Comerford & Cimini included an list of costs of one-thousand and twenty-four dollars and ninety-five cents ($1,024.95).  These costs included four-hundred and nineteen dollars and thirty cents ($419.30) for photocopies, three-hundred and thirty-two dollars and sixty-five cents ($332.65) for postage, one-hundred and fifty-three dollars and forty-two cents ($153.42) for phone and conference calls, forty-three dollars and fifty-eight cents ($43.58) for UPS, twenty-six dollars ($26.00) for fax, twenty-five dollars ($25.00) for Robert Cyphers' fee for appearance at a deposition, and twenty-five dollars ($25.00) for a service attempt.  The costs permitted are the copying costs.  However, as the firm did not distinguish between copies for action 3:99-CV-1574 and action 3:99-CV-1624, the Court will award a total of two-hundred and nine dollars and sixty-five cents ($209.65) in taxable costs.

## CONCLUSION

For the reasons stated above, the Plaintiff's motion for attorneys' fees and costs will be granted in part and denied in part.

An appropriate Order follows.


January 4, 2008                                 /s/ A. Richardo Caputo
Date                                               A. Richard Caputo
                                                      United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMA CORPORATION et al.,

      Plaintiffs,

      v.

DR. GIRIWARLAL GUPTA, et al.,

      Defendants.

NO. 3:99-CV-01624

consolidated under 3:99-CV-1574

(JUDGE CAPUTO)

## ORDER

**NOW**, this __4th__ day of January, 2008, **IT IS HEREBY ORDERED** that Plaintiff's motion for attorneys' fees and costs (Doc. 224) is **GRANTED in part** and **DENIED in part** as follows:

(A)    Attorneys' Fees

(1)    Ullman, Shapiro & Ullman, L.L.P. is awarded attorneys' fees in the amount of:

    (a)    $177,365.87 for attorney Dennis Cavanaugh;

    (b)    $12,116.50 for attorney Elizabeth S. Gioiosa Dillabough;

    (c)    $703.00 for attorney Steven Shapiro;

    (d)    $156.50 for attorney Marc S. Ullman;

    (e)    $1,200.00 for attorney Vanessa Riviera;

    (f)    $5,875.75 for work by the law clerk;

    (g)    and $4,640.39 in taxable costs.

(2)    D. Bruce Hanes and Associates, P.C. is not awarded any attorneys' fees or costs.

(3)    Foley, Cognetti, Comerford & Cimini is awarded:

(a)  $29,548.00 for attorneys' fees; and

(b)  $209.65 in taxable costs.

(B)  Costs

(4)  Plaintiff is awarded expert witness fees in conjunction with ParenteRandolph in the amount of $80.00.

(5)  Plaintiff is awarded expert witness fees and costs in conjunction with Khaitan & Co. in the amount of $454.00.

(6)  Plaintiff is awarded expert witness fees for the deposition appearance of the accountant in the amount of $40.00.

(7)  Plaintiff is awarded lay witness fees for attendance in the amount of;

(a)  $160.00 for M.K. Jalan;

(b)  $120.00 for Rajiv Jalan;

(c)  $40.00 for Rishi Jalan;

(d)  $40.00 for Darel Kesner; and

(e)  $40.00 for Dan Stoker.

(8)  Plaintiff is awarded subsistence costs in the amount of:

(a)  $752.00 for Rajiv Jalan;

(b)  $282.00 for Rishi Jalan; and

(c)  $1,034.00 for M.K. Jalan.


_____                    /s/ A. Richard Caputo_____
                                   A. Richard Caputo
                                   United States District Judge